**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| BERIN LOCKWOOD, Individually and on behalf of Class Members, | ) ) ) | |
| | ) | Civil Action No. 05:10647 (MLW) |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| FULL SPECTRUM LENDING, INC. and COUNTRYWIDE HOME LOANS, INC., | ) ) ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS' MOTION AND INCORPORATED
MEMORANDUM TO COMPEL ARBITRATION, DISMISS
OR STAY LITIGATION, AND DISMISS CLASS ALLEGATIONS**

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), defendants Full

Spectrum Lending, Inc. (n/k/a Full Spectrum Lending, a division of Countrywide Home Loans,

Inc. ("Full Spectrum")) and Countrywide Home Loans, Inc. ("Countrywide") (collectively

"Defendants") hereby move this Court (1) to enforce a valid and binding arbitration agreement

executed by plaintiff Berin Lockwood ("Plaintiff" or "Lockwood"), (2) to dismiss, or at least

stay, this action pursuant to that agreement, and (3) to dismiss Lockwood's class claims as barred

by that agreement.[1]

---

[1]    Numerous federal courts have held that a motion to compel arbitration is properly treated as a motion to dismiss for failure to state a claim, and thus a "responsive pleading" within the meaning of Fed. R. Civ. P. 12. See, e.g., Palko v. Airborne Express, Inc., 372 F.3d 588, 597-98 (3d Cir. 2004); Nationwide Ins. Co. v. Patterson, 953 F.2d 44, 45 n. 1 (3d Cir. 1991); Gratzer v. Yellow Corporation, 316 F. Supp.2d 1099, 1105 (D. Kan. 2003). Defendants rely upon this principle of law here and expressly reserve their right to answer, assert affirmative defenses to, and/or file appropriate motions to dismiss Plaintiff's complaint ("Complaint") in the event this Motion is not granted. Further, and consistent with this, the parties have, contemporaneously herewith, filed a Stipulation to extend Defendants' time to answer or otherwise plead in response to the Complaint during the pendency of this Motion. Stipulation to Extend Time (April 22, 2005). To the extent additional pleading may be required at this time, however, Defendants hereby deny the allegations directed to them in the Complaint, and deny that Lockwood is entitled to any relief based upon the acts and omissions alleged.

## INTRODUCTION

On August 27, 2004, Lockwood executed a "Mutual Agreement to Arbitrate Claims" ("Agreement") in consideration for a residential mortgage loan, which he originated with Full Spectrum.[2] Thereafter, on February 25, 2005, Lockwood sued Defendants, alleging that Defendants violated numerous federal and state laws, including the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq., the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., G.L. c. 93A, § 9 and G.L. c. 140D, in originating and servicing his mortgage loan. Complaint, ¶ 1. Lockwood purports to bring these claims on behalf of himself and a nationwide class consisting of all borrowers who have or had mortgage loans "owned or serviced" by Defendants at any time. Id., ¶ 29. But, as discussed more fully below, Lockwood's claims here are precisely the type of claims he explicitly agreed to arbitrate and not pursue on behalf of a class. Agreement at 1-2 (providing that all claims arising out of or relating to Lockwood's mortgage loan transaction must be arbitrated, and that Lockwood may not represent or be a member of any class pursuing such claims) (Viores Aff., Ex. C). Lockwood, however, has steadfastly refused to abide by the Agreement, despite having been put on notice by Defendants of its application to his claims and Defendants' election to arbitrate those claims.

By this Motion, Defendants request that this Court enforce the Agreement in accordance with the FAA, compel Lockwood to arbitrate his various claims relating to the origination and servicing of his mortgage loan, dismiss (or, at least, stay) this lawsuit pending that arbitration, and dismiss his class allegations. Put simply, this Court must compel arbitration and dismiss the class allegations because, among other reasons, Lockwood agreed (1) to arbitrate the precise

---

[2]    A true and correct copy of the Agreement is attached as Exhibit C to the accompanying Affidavit of Christos Viores ("Viores Aff.") (April 21, 2005), filed contemporaneously herewith.

claims he now asserts against Defendants, and (2) to waive his right to pursue those claims as a class representative or member of a class. Agreement at 1-3.

<strong>BACKGROUND AND PROCEEDINGS</strong>

**A.    LOCKWOOD'S MORTGAGE LOAN AND THE ARBITRATION AGREEMENT.**

On August 27, 2004, Lockwood purchased a home located at 14 Everett Street in Norfolk, Massachusetts ("Property"). Complaint, ¶ 5 and Ex. A. To finance his purchase, Lockwood borrowed $450,000 from Full Spectrum. Viores Aff., ¶ 3. Lockwood's loan was secured by an adjustable rate note and mortgage on the Property he executed in favor of Full Spectrum. Id., ¶¶ 3, 7-8 and Exs. A (Adjustable Rate Note (August 27, 2004)) & B (Mortgage (August 27, 2004)).

In connection with and consideration for his mortgage loan, Plaintiff executed the Agreement. Agreement at 1, 3 (reciting that the Agreement was executed in "consideration" of, among other things, Full Spectrum's "extension of credit," to Lockwood); Viores Aff., ¶ 3 and Ex. A. Under the Agreement, Lockwood (and, for that matter, Full Spectrum and/or Countrywide) is obligated, with only few exceptions not applicable here,[3] to arbitrate *any* "claims" arising out of the subject loan transaction. Agreement at 1.[4] Indeed, in this regard, the Agreement expressly provides that "any case, controversy, dispute, lawsuit, or *claim* now or hereafter existing between [Lockwood and Full Spectrum and its successors or assigns] arising out of, relating to or associated with the [mortgage loan]" shall be resolved by binding arbitration. Id. at 1 (emphasis added). The term "[c]laim" is further defined in the Agreement to

---

[3]    For example, the Agreement excludes actions to effect a foreclosure, bankruptcy proceedings, and actions brought in small claims court for less than $5,000 from its mandatory arbitration provisions. Agreement at 1.

[4]    It is important to note that, although the Agreement is facially between Lockwood and Full Spectrum, it is enforceable by and against Full Spectrum and Countrywide on the facts of this case. This is because, among other reasons, the Agreement, by its terms, extends to Full Spectrum's "successors." Agreement at 1. Countrywide is just that. In 2004, Full Spectrum merged into and became a division of Countrywide, thereby making Countrywide its corporate successor. Viores Aff., ¶ 2.

3

include "anything arising out of or relating to" (a) the mortgage loan transaction, (b) any "fees or charges" associated with the transaction, (c) "documents or instruments that contain information about" the transaction, (d) "any act or omission concerning servicing, collecting, or entering" the transaction, and/or (e) "any act or omission concerning any" claim. Id. And, perhaps most importantly, the Agreement expressly enumerates "examples" of the types of "claims" covered by its terms. Id. Among the "examples" listed are claims under TILA, RESPA, "federal or state consumer protection statutes or regulations," and any dispute about the "making, closing, servicing, collecting or entering into" of the mortgage loan transaction – i.e., the precise types of claims Lockwood asserts against Defendants here. Id.; see generally Complaint (allegations that Defendants violated RESPA, TILA and G.L. c. 93A).

Further, in addition to its mandatory arbitration provisions, the Agreement also contains a number of provisions precluding Lockwood from pursuing claims on behalf of persons or entities other than himself. Agreement at 2, 3. For example, the Agreement contains a "No Joinder or Parties" clause, providing that (a) any arbitration proceeding "will only consider" Lockwood's claims and not claims "by or on behalf of other borrowers," and (b) Lockwood may not join with other borrowers "to bring claims" in a single arbitration. Id. at 2. Likewise, the Agreement also contains a class action waiver provision, stating, in bold and capitalized text, that "[b]y entering into this Agreement, [Lockwood and Defendants] knowingly and voluntarily waive … the right to participate as a representative or member of any class of claimants pertaining to any claim." Id. (emphasis removed).

## B.    LOCKWOOD'S COMPLAINT.

Just over three months after obtaining his mortgage loan, Plaintiff refinanced with another lender. Complaint, ¶ 13. As a result, he no longer has a loan with Defendants. Id. After

completing his refinance transaction, however, Plaintiff filed this lawsuit in Massachusetts Superior Court for Norfolk County.[5]

In his Complaint, Lockwood alleges that Defendants engaged in improper origination and servicing practices with respect to his loan. Specifically, with respect to his claims of improper loan origination practices, Lockwood alleges, among other things, that Defendants changed the terms of his loan, including its interest rate, at closing, failed to provide him with a "good faith estimate" of loan settlement charges and a loan commitment letter, and charged him purportedly improper or excessive loan fees. Complaint, ¶¶ 7-11. Plaintiff alleges that these purported acts and omission constitute violations of RESPA, TILA, G.L. c. 93A, and other statutory and common law requirements. Id., ¶¶ 1, 7-11 and 17-28. Further, with respect to his claims of improper loan servicing practices, Lockwood alleges that Defendant failed to respond to certain "qualified written requests" when servicing his loan in violation of RESPA. Id., ¶ 34.

Based upon Defendants' alleged violations of federal, state and common law, Lockwood seeks restitution, multiple damages ... attorney's fees[, and] ... injunctive relief," as well as statutory and compensatory damages, disgorgement and other relief for himself." Id., ¶ 1. In addition, Lockwood also purports to bring his claims on behalf of a putative nationwide class consisting of all borrowers whose mortgage loans are or have been "owned or serviced" by Defendants at any time. Id., ¶ 29-38.

## C. LOCKWOOD'S REFUSAL TO SUBMIT HIS CLAIMS TO ARBITRATION, DESPITE NOTICE AND DEMAND.

After receiving the Complaint, Defendants, through their counsel, contacted Lockwood's counsel to advise him of the Agreement and to request that Lockwood withdraw the Complaint

---

[5]    On April 1, 2005, Defendants timely and properly removed this lawsuit to this Court pursuant to 28 U.S.C. §§ 1331, 1332(c), 1332(A), and Pub. L. 109-2 (the Class Action Fairness Act).

and submit his claims to the mandatory arbitration process set forth in the Agreement.  Affidavit of Brooks R. Brown ("Brown Aff.") (April 21, 2005), ¶ 2 and Ex. A, filed contemporaneously herewith.  Thereafter, on March 11, 2005, Defendants sent a copy of the Agreement to Lockwood's counsel, and requested that he advise Defendants as to whether Lockwood would arbitrate his claims in accordance with its terms.  Id.  In that letter, Defendants' counsel also advised Lockwood that Defendants intended to seek an order compelling arbitration if Lockwood refused to do so.  Just six days later, on March 17, 2004, Plaintiff's counsel sent Defendants' counsel a letter refusing to arbitrate Lockwood's claims in accordance with arbitration procedures outlined in the Agreement.  Id., ¶ 3 and Ex. B.  Rather, Plaintiffs' counsel stated that Lockwood would only agree to arbitrate in accordance with the particular terms and conditions of his choosing and not in accord with the parties' Agreement.  Id.

Later that same day, Defendants' counsel responded to Lockwood's counsel's letter.  Brown Aff., ¶ 4 and Ex. C.  There, Defendants reiterated their position that Lockwood's claims were required to be resolved in accordance with the arbitration procedures in the Agreement, not the different procedures proposed by Lockwood's counsel.  Id.  Consistent with this, Defendants' counsel also requested that Lockwood's counsel respond by March 21, 2005 as to whether Plaintiff would abide by the Agreement.  Id.  Lockwood's counsel did not respond to Defendants' inquiry, either orally or in writing, by March 21, 2005.  Accordingly, on March 22, 2005, Defendants' counsel sent Lockwood's counsel a letter stating that Defendants intended to proceed with the understanding that Lockwood had "refused to submit his claims to the arbitration process" set forth in the Agreement.  Id., ¶ 4 and Ex. D.  Importantly, this letter specifically advised Lockwood's counsel to contact Defendants' counsel immediately if their understanding was not correct.  Id.  To date, Defendants have received any response to their

6

March 17 and March 22, 2005 letters. As such, it brings this Motion to enforce the express provisions of the Agreement.

**ARGUMENT**

**A.    APPLICABLE LEGAL PRINCIPLES**

The Agreement here is expressly governed by the FAA. Agreement at 2. The FAA provides that written arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 3.[6] "The 'primary purpose' of the Federal Arbitration Act is to ensure that private agreements to arbitrate are enforced according to their terms." Sentinel Prods. Corp. v. Scriptoria, 124 F. Supp.2d 115, 117 (D. Mass. 2000) (quoting PaineWebber, Inc. v. Elahi, 87 F.3d 589, 593 (1st Cir. 1996)). Accordingly, "[t]here is a strong presumption in the federal courts in favor of arbitration" and all doubts about the arbitration of any claim are to be construed in favor of arbitration. Baggesen v. Am. Skandia Life Assurance Corp., 235 F. Supp.2d 30, 31 (D. Mass. 2002); see also Moses H. Gore Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 25 (1983). Indeed, so strong is the presumption in favor of arbitration under the FAA that the Supreme Court has held that the Act "'leaves no place for the exercise of discretion by a district court but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration

---

[6]    The FAA applies to written arbitration agreements "evidencing a transaction involving commerce." Bercovitch v. Baldwin Sch., 133 F.3d 141, 148 (1st Cir. 1998) (quoting 9 U.S.C. § 2). The term "commerce" is broadly defined in this context "and is coextensive with the reach of Congress's Commerce Clause power." Id. Here, the FAA applies to the Agreement because, among other reasons, it expressly states that "the [mortgage loan and note] governed by this Agreement [are] involved in interstate commerce...." Agreement, at 2. See also Thomas O'Connor & Co. v. Ins. Co. of N. Amer., 697 F. Supp. 563, 566 (D. Mass. 1988) (concluding that the arbitration agreement involved interstate commerce because the arbitration clause "expressly provides that the agreement 'evidences a transaction involving interstate commerce....'"). Further to this point, the parties to the Agreement reside in different states — Lockwood resides in Massachusetts and Defendant Countrywide, of which Full Spectrum is now a division, is a New York corporation with its principal place of business in Calabasas, California — and the funds with which Countrywide made the mortgage loan to Plaintiff originated from outside of Massachusetts. See Complaint, ¶¶ 2-4; Viores Aff., ¶¶ 2, 4, and 6 (setting forth additional grounds to support the finding that the Agreement evidences a transaction involving interstate commerce).

7

agreement has been signed.'" Moses H. Gore Mem. Hosp., 460 U.S. at 32 (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985)).

Against this background, it is well-settled that the party resisting arbitration has the burden of proving that the dispute in question is unsuitable for arbitration. Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91 (2000). Here that burden, which has been described as a heavy one, is upon Lockwood. Id. But, inasmuch as the Agreement expressly applies to Lockwood's claims, it is evident that he cannot carry that burden. Accordingly, the Agreement should be enforced pursuant to its terms. See Volt Info. Sciences, Inc. v. Bd. of Trustees of the Leland Stanford Junior Univ., 498 U.S. 468, 479 (1989) (purpose of the FAA is to ensure that private agreements are enforced according to their terms).

**B.    LOCKWOOD'S CLAIMS ARE ARBITRABLE UNDER THE TERMS OF THE AGREEMENT.**

This Court must grant this Motion if it determines that "the arbitration agreement in fact covers the dispute in question." Bercovitch, 133 F.3d at 148. Here, Lockwood's claims fall squarely within the plain language of the Agreement. It is evident from the face of his Complaint that Lockwood's claims "aris[e] out of, relat[e] to or [are] associated with" the subject residential mortgage loan transaction. Indeed, the Complaint not only references the mortgage loan throughout, but also alleges Defendants' breaches thereof. Complaint, ¶¶ 1, 5-17, 29-38.

Moreover, in the Complaint, Lockwood claims that Defendants violated TILA, RESPA, and G.L. c. 93A – i.e., Massachusetts' consumer protection statute – in originating and servicing the mortgage loan that is the subject of this lawsuit. Complaint ¶¶ 1, 17-38. Such claims are expressly enumerated in the Agreement as "examples" of the exact types of claims that are subject to its mandatory arbitration process. Agreement, at 1; see also Large v. Conseco Fin. Serv. Corp., 292 F.3d 49, 55-56 (1st Cir. 2002) (holding that claims under TILA are arbitrable);

8

Blount v. Na'l Lending Corp., 108 F. Supp.2d 666, 670-71 (S.D. Miss. 2000) (finding that

RESPA claims are arbitrable). Further, none of the claims alleged in the Complaint is among the

claims excluded from arbitration under the Agreement.[7] Accordingly, this Court should

conclude that the Agreement covers the claims alleged in Lockwood's Complaint and order that

Lockwood fulfill his contractual obligations under the Agreement and submit his claims to

arbitration.[8]

## C.    THIS LAWSUIT SHOULD BE DISMISSED OR AT LEAST STAYED PENDING ARBITRATION.

Although Section 3 of the FAA, 9 U.S.C. § 3, requires courts to at least stay proceedings

pending the completion of arbitration, courts recognize that, where all of the issues in a lawsuit

are covered by an agreement's arbitration provision, the action should be dismissed rather than

stayed. See, e.g., Spencer Furniture, Inc., 349 F. Supp.2d at 51 ("Courts may go beyond a stay,

however, and dismiss the proceeding 'when all of the issues before the court are arbitrable.'")

(quoting Bercovitch, 133 F.3d at 156 n.21). As discussed above, all of Lockwood's claims

against Defendants are subject to binding arbitration, and complete relief (assuming any such

relief is even warranted) is available to Lockwood in the arbitration forum. As such,

Lockwood's claims against Defendants should be dismissed. At the very least, however, those

claims must be stayed pending arbitration in accordance with the Agreement. Agreement, at 1

---

[7]    See supra, note 3.

[8]    Curiously, in correspondence with Defendants' counsel, Lockwood's counsel has suggested that Lockwood was not "provided" with a copy of the Agreement. Brown Aff., Ex. B. At this stage, however, it is not at all clear what, if any, difference Plaintiff's counsel contends this allegation makes with respect to the arbitrability of Lockwood's claims. Defendants' position is that it makes no difference. The factual record here reveals that Lockwood executed the Agreement, and is thus bound by its terms. Agreement at 1-3 (bearing Lockwood's signature on the final page and initials on the preceding pages); Viores Aff. ¶¶ 3, 5, 9 and Ex. C. Indeed, Lockwood's signature and initials on the Agreement are identical to those on the HUD-1 Uniform Settlement Statement ("HUD-1"), Mortgage and Note he executed in connection with the subject mortgage loan transaction. Compare Agreement at 1-3 with Complaint, Ex. A (HUD-1) and Viores Aff., Exs. A (Note) and B (Mortgage).

(providing that each party may bring an action to compel arbitration or stay the litigation of any arbitrable claim pending arbitration).

**D.    LOCKWOOD'S CLASS ACTION CLAIMS MUST BE DISMISSED.**

In addition to requiring that Lockwood's individual claims be arbitrated (not litigated), the Agreement also operates to bar his class allegations. As such, this Court should not hesitate enforce the Agreement according to its terms to dismiss Lockwood's class claims.

It is well-settled that, where, as here, a plaintiff purports to sue on behalf of a class in breach of provisions in an arbitration agreement waiving his right to do so, the class allegations must be stricken. See Jenkins v. First American Cash Advance of GA, LLC, 400 F.3d 868, 878-89 (11th Cir. 2005); Livingston v. Assocs. Fin., Inc., 339 F.3d 553, 559 (7th Cir. 2003) (enforcing arbitration agreement that expressly precluded plaintiffs from bringing class claims because the Court was "obliged to enforce the type of arbitration to which these parties agreed, which does not include arbitration on a class basis"). Here, Lockwood expressly agreed "that any arbitration proceeding will only consider [his] claims" and that "[c]laims by or on behalf of other borrowers will not be arbitrated in any proceeding considering" his claims. Agreement at 2. Furthermore, Plaintiff expressly waived any "right to participate as a representative or a member of any class of claimants pertaining to any claim" arising out of or relating to his mortgage loan transaction. Id. Put simply, the Agreement precludes Plaintiff from pursing this lawsuit as a class action and from attempting to arbitrate and/or litigate the claims of any other person in a proceeding arising out of or relating to his Full Spectrum loan. Under these circumstances, this Court should dismiss Plaintiffs' class action allegations. See Gipson v. Cross Country Bank, 354 F. Supp.2d 1278, 1288-89 (M.D. Ala. 2005) (dismissing plaintiff's class action allegations based upon arbitration agreement precluding class claims).

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Defendants respectfully request that this Court (a) enforce the Agreement and compel Plaintiff to submit his claims to arbitration in accordance with the Agreement, (b) dismiss, or at least stay, this litigation pending the outcome of the arbitration, and (c) dismiss Lockwood's class allegations.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Defendants respectfully request oral argument on the ground that such will assist the Court in its resolution of the issues raised by this Motion.

Respectfully submitted,

FULL SPECTRUM LENDING, INC. (n/k/a Full Spectrum Lending, a division of Countrywide Home Loans, Inc.) and COUNTRYWIDE HOME LOANS, INC.

By their attorneys,

Thomas M. Hefferon (BBO# 548289)
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC 20001
(202) 346-4000

Brooks R. Brown (BBO# 634144)
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA  02109
(617) 570-1000

Dated:  April 22, 2005

11

## LOCAL RULE 7.1 CERTIFICATION

I, Brooks R. Brown, Esq., counsel for defendants Full Spectrum Lending, Inc. (n/k/a Full Spectrum Lending, a division of Countrywide Home Loans, Inc.) and Countrywide Home Loans, Inc., hereby certify that I have conferred with Plaintiff's counsel, Evans J. Carter, Esq., in a good faith attempt to resolve or narrow the issues presented by the foregoing "Defendants' Motion and Incorporated Memorandum to Compel Arbitration, Dismiss or Stay Litigation, and Dismiss Class Allegations"

Brooks R. Brown

## CERTIFICATE OF SERVICE

I, Brooks R. Brown, Esq., counsel for defendants Full Spectrum Lending, Inc. (n/k/a Full Spectrum Lending, a division of Countrywide Home Loans, Inc.) and Countrywide Home Loans, Inc., hereby certify that, on April 22, 2005, I caused a true copy of the foregoing "Defendants' Motion and Incorporated Memorandum to Compel Arbitration, Dismiss or Stay Litigation, and Dismiss Class Allegations" to be served, by First Class U.S. Mail, postage prepaid, upon the attorney of record for each party in the above-entitled action.

Brooks R. Brown