**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| BERIN LOCKWOOD, Individually and on behalf of Class Members,  )<br>)<br>)<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>FULL SPECTRUM LENDING, INC. )<br>and COUNTRYWIDE HOME  )<br>LOANS, INC.,  )<br>)<br>Defendants.  )<br>) | Civil Action No. 05:10647 (MLW) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO COMPEL ARBITRATION, DISMISS OR
STAY LITIGATION, AND DISMISS CLASS ALLEGATIONS**

Defendants Full Spectrum Lending, Inc. (n/k/a Full Spectrum Lending, a division of Countrywide Home Loans, Inc. ("Full Spectrum")) and Countrywide Home Loans, Inc. ("Countrywide") (collectively "Defendants") moved this Court to compel arbitration of this lawsuit because the "Mutual Agreement to Arbitrate Claims" ("Agreement") expressly covers the claims raised by plaintiff Berin Lockwood ("Plaintiff" or "Lockwood") in his Complaint.[1] In response, Lockwood concedes that his claims here are within the scope of the Agreement. However, in an attempt to avoid the Agreement, Lockwood proffers four unpersuasive arguments as to why it is purportedly not enforceable at all: (1) that the Agreement was not delivered or signed, or lacks mutuality; (2) that he was "fraudulently induced" to enter into the mortgage loan transaction of which the Agreement is a part; (3) that the Agreement is

---

[1] This Court granted Defendants leave to file this Reply by electronic Order dated May 24, 2005. See Order (May 24, 2005).

unconscionable because class actions are precluded in the arbitration; and (4) that every single arbitrator of the National Arbitration Forum ("NAF") -- *i.e.,* the entity before which the Agreement requires Plaintiff's claims to be arbitrated -- is somehow biased against him.  As discussed more fully below, Plaintiff's arguments provide no legitimate basis for this Court to decline to compel arbitration of this matter.  Accordingly, this Court should compel the arbitration to which Lockwood agreed.

      A.      **THE ARBITRATION AGREEMENT COVERS THE PRECISE CLAIMS PLAINTIFF PURPORTS TO BRING AGAINST DEFENDANTS.**

Under the terms of the Agreement, the parties, including Plaintiff, expressly agreed to arbitrate "any case, controversy, dispute, lawsuit, or claim . . . arising out of, relating to or associated with the" subject mortgage transaction.  <u>Agreement</u> at 1 (copy attached to the Affidavit of Christos Viores in Support of Motion to Compel Arbitration (April 21, 2005), previously filed, as Exhibit C.)  In his Opposition, Plaintiff proffers no argument that any of his claims against Defendants -- each of which arise out of or relate to the subject mortgage loan transaction – are outside the scope of the Agreement.  <u>See generally</u> <u>Plaintiff's Opposition to Defendants' Motion to Compel Arbitration, Dismiss or Stay Litigation and Dismiss Class Allegations</u> ("<u>Opposition</u>") (May 11, 2005).  This concession is significant, because it is well-settled that "[t]he 'primary purpose' of the Federal Arbitration Act [("FAA")] is to ensure that private agreements to arbitrate are enforced according to their terms." <u>Sentinel Prods. Corp. v. Scriptoria</u>, 124 F. Supp.2d 115, 117 (D. Mass. 2000) (<u>quoting</u> <u>PaineWebber, Inc. v. Elahi</u>, 87 F.3d 589, 593 (1st Cir. 1996)).  Indeed, "[t]here is a strong presumption in the federal courts in favor of arbitration" and all doubts about the arbitration of any claim are to be construed in favor of arbitration.  <u>Baggesen v. Am. Skandia Life Assurance Corp.</u>, 235 F. Supp.2d 30, 31 (D. Mass. 2002).  So strong is the presumption in favor of arbitration under the FAA that the Supreme

Court has held that the Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Moses H. Gore Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 32 (1983).

As discussed in detail in Defendants' opening brief, the Agreement unequivocally covers Lockwood's claims. Defendants' Motion and Incorporated Memorandum to Compel Arbitration, Dismiss or Stay Litigation, and Dismiss Class Allegations ("Motion") (April 22, 2005) at 8-9. Indeed, his claims are precisely the type subject to the mandatory arbitration provisions of the Agreement. Id. None of his claims falls within the small number of claims excluded from arbitration under the Agreement. Id. at 3. Further, under the terms of the Agreement, it is the arbitrator that has the "executive authority to resolve any dispute relating to the applicability or enforceability of the Agreement." Agreement at 2. Where, as here, the language of the arbitration agreement is broad and provides that the subject dispute is to be resolved by binding arbitration, this Court must compel arbitration. See, e.g., Gaston Andrey of Framingham, Inc. v. Ferrari of N.A., Inc., 983 F. Supp. 18, 21 (D. Mass. 1997) ("[T]he case law directs that once the existence of agreement to arbitrate is established to the satisfaction of the court, the scope of the arbitration obligation is a matter to be decided by the arbitrator."); Baggesen, 235 F. Supp.2d at 32 ("[T]he FAA 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'") (citation omitted).

B.    **LOCKWOOD'S ATTACKS ON THE ARBITRATION AGREEMENT ARE UNAVAILING.**

1.    **THE AGREEMENT DOES NOT LACK CONTRACTUAL FORCE.**

Conceding that his claims are covered by the Agreement, Plaintiff argues that the Agreement is nevertheless invalid because it lacks basic formalities or characteristics of a contract. Specifically, Lockwood contends that the Agreement lacks "mutuality of obligation," was not "delivered" to him, and/or was not "signed" by Defendants. Opposition at 2-3. This hodge-podge of arguments is easily disposed of, however, because the points are belied by the facts and unsupported by applicable Massachusetts law.

## MUTUALITY

Even a cursory review of the Agreement confirms that it entails a mutuality of obligations. The Agreement imposes the same obligations on Defendants as it does on Lockwood. For example, the Agreement provides that: (i) arbitration is the exclusive remedy for both parties for claims covered by the Agreement; (ii) both parties may bring a motion to compel arbitration; (iii) neither party may arbitrate certain exempt claims, including disputes over foreclosure, bankruptcy, and small claims; (iv) both parties must pay their own costs and attorneys' fees; (v) both parties may assign rights under the Agreement to others; and (vi) both parties waive certain rights, including a trial by jury. In the face of these provisions (and others), it is evident that the Agreement imposes mutual obligations on both parties, and is thus enforceable against Plaintiff.

Lockwood does not completely explain how the Agreement is not mutual. He seems to suggest there is no mutuality because the Agreement is a document separate from the promissory note he executed in connection with the subject loan transaction ("Note"). Opposition at 2. But that does not somehow make the Agreement a non-mutual contract. Nor is there any

4

significance in the Agreement's physical separateness from the Note, as both were signed as part of the loan closing and the Agreement is given, in part, as consideration for the mortgage loan itself. Agreement at 1.

Lockwood also suggests there is no mutuality because the Agreement limits class actions, a procedural device only he has an interest in. Opposition at 2. That point is insubstantial. Every agreement has terms that only one side (or the other) is interested in, and that does not make contracts non-mutual. Moreover, under Massachusetts law, the "obligations of the parties to a contract need not be substantially equal." Eliopoulos v. Makros, 322 Mass. 485, 488 (1943); see also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991) (holding that a contract need not be reciprocal to be enforceable). Further, the Supreme Court has held specifically that parties can agree to arbitrate some disputes and not others without undermining the mutuality of obligation. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 409-11 (1967). Indeed, the Supreme Court has explained that, if the requirements of consideration have been met, then mutuality of obligation is not essential. See id.

### DELIVERY

Plaintiff's second argument, that the Agreement is invalid because it was allegedly not "delivered" to him, is likewise flawed. As an initial matter, Plaintiff admits that his signature appears on the Agreement. Affidavit of Berin Lockwood ("Lockwood Aff."), ¶ 9 (May 9, 2005). This admission is fatal to any claim that the Agreement was not "delivered" to Lockwood. Regardless, however, delivery of the executed version of a contract to the other party is not necessary to the formation of a contract. Hunt v. Rice, 25 Mass. App. Ct. 622, 630-32 (1988). See also Frank Realty Inc. v. Handelsman, No. CA 02-2146, 2004 WL 808976 at *1 (Mass. Super. Ct. March 16, 2004). Plaintiff's reliance on Golden v. The Equitable Life Assurance

Soc'y of the U.S. as authority standing for the contrary proposition is misplaced. 293 Mass. 286 (1936). In Golden, the contract at issue unequivocally made its delivery a condition precedent to its enforceability. See Golden, 293 Mass. at 288 ("To entitle the plaintiff to recover she was required to prove as a condition precedent that the policy was delivered to her husband….Th[is] condition w[as] made a part of the application and embodied in the policy."). By contrast, the Agreement contains no provision requiring its delivery to either party before it may be enforced.

### EXECUTION

Plaintiff's final argument, that the Agreement is invalid because it was not executed by Countrywide, also misses the mark. Opposition at 2. It is well-established that, to be enforceable, a contract need only contain the signature of the party against whom it is to be enforced. Forman v. Gadouas, 247 Mass. 207, 213 (1924) (contract need not be signed by party seeking enforcement). Lockwood concedes that he signed the Agreement. See Lockwood Aff., ¶ 9. The Agreement is thus valid and enforceable against him, regardless of Defendants' execution. See, e.g., Giuliano v. Nations Title, Inc., No. 96-2331, 1998 WL 45459 at *6 (1st Cir. Jan. 23, 1998) (concluding that defendants' failure to sign contract is irrelevant in determining whether contract is valid and enforceable against plaintiff so long as plaintiff does not contest that he signed it) (citing Forman, 247 Mass. at 213).

### 2. PLAINTIFF'S FRAUD IN THE INDUCEMENT ARGUMENT PROVIDES NO BASIS FOR THIS COURT TO DECLINE TO COMPEL ARBITRATION.

Plaintiff next seeks to escape the Agreement by arguing that he was fraudulently induced to enter the mortgage loan transaction of which the Agreement is a part. Again, Plaintiff's argument misses the mark. In order to prevail upon a claim of fraudulent inducement, Lockwood must show that (1) Defendants made a misrepresentation, (2) of material fact, (3) with knowledge of its falsity, and (4) he relied upon it. See Barrett Assocs., Inc. v. Aronson, 346

6

Mass. 150, 152 (1963). Lockwood has failed to make out a prima facie showing that he was fraudulently induced to enter into the Agreement, as he has proffered no evidence of any representation, any untrue representation, or any ill-intent by Defendants. Further, any claim that the Agreement should be set aside because Lockwood was fraudulently induced to enter into the subject mortgage loan transaction must be resolved by an arbitrator.

With respect to any claim that he was somehow fraudulently induced to enter into the Agreement itself, it is clear from Lockwood's own affidavit that he cannot sustain his burden of proof. According to his affidavit, no one made any representations at all to him about the Agreement. Lockwood Aff., ¶ 10 ("Neither Attorney Kinsella nor anyone else explained the Mutual Agreement to Arbitrate Claims. I certainly did not read it as it was put in front of me with a large stack of papers…Also, no one discussed this matter with me before or after the closing and I was surprised such an agreement existed."). Lockwood's admission that Defendants made no representations to him concerning the Agreement is fatal to any claim of fraudulent inducement. Moreover, there is no assertion that anything stated in or about the Agreement was untrue. See generally Opposition; Lockwood Aff. And, Lockwood makes no showing that Defendants acted with intent to deceive him. Id. Lockwood's claim that he was fraudulently induced to enter into the Agreement thus fails as a matter of law. See Theta Prods., Inc. v. Zippo Mfg. Co., No. 00-2089, 2001 WL 483341 at *5 (1st Cir. May 8, 2001) (concluding that plaintiff failed to prove fraud in the inducement where record contained no evidence that defendant made any false representation to plaintiff in order to induce plaintiff to rely on it).

And, Plaintiff's related claim that the Agreement should be set aside because he was fraudulently induced to enter into the subject mortgage loan transaction, of which the Agreement

7

is a part, is no bar to compelling arbitration.[2]  Where, as here, a claim of fraud in the inducement is directed toward the entire contract, the issue must be resolved by the arbitrator, not by a court considering whether to compel arbitration.  Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404-05 (1967);  Hurlbut v. Gantshar, 674 F. Supp. 385, 390 (D. Mass. 1987) (disputes as to the entire document are for the arbitrator);  see also Large v. Conseco Fin. Servicing Corp., 292 F.3d 49, 53 (1st Cir. 2002) (explaining that broad arbitration clauses encompass claims that fraud induced contract itself); Unionmutual Stock Life Ins. Co. v. Beneficial Life Ins. Co., 774 F.2d 524, 528 (1st Cir. 1985) ("'A broad arbitration clause will be held to encompass arbitration that the contract itself was induced by fraud.'") (quoting Prima Paint, 388 U.S. at 402); Spencer Furniture, Inc. v. Media Arts Group, Inc., 349 F. Supp.2d 49, 52 (D. Mass. 2003) (courts are not permitted to consider claims of fraud in the inducement of a contract generally).

    **3.**    **THE ARBITRATION AGREEMENT'S CLASS ACTION WAIVER PROVISION DOES NOT RENDER THE AGREEMENT UNCONSCIONABLE.**

Lockwood next argues that the Agreement is unconscionable, and should be stricken in its entirety, because it prohibits him from pursuing a class action in arbitration.  Opposition at 4-11.  As an initial matter, Lockwood has not borne his burden as to this argument because he has ignored the settled law that a contract must be both procedurally and substantively unconscionable in order for it to fall.  Zapatha v. Dairy Mart, Inc., 381 Mass. 284, 294 n.13 (1980) (noting "two-part test for unconscionability involves determining whether there was 'an absence of meaningful choice on the part of one of the parties, together with contract terms

---

[2]    Lockwood's fraud-in-the-inducement claim appears to be focused primarily on the subject mortgage loan transaction, as a whole, not on the Agreement in particular.  According to Lockwood, he "entered into the mortgage loan and the Arbitration Agreement as a result of the false statements of the defendants' employee, Harold Bean" concerning the interest rate on the loan.  Opposition at 3; Lockwood Aff., ¶¶ 3, 5, 6.

8

which are unreasonably favorable to the other party'") (citation omitted).  Lockwood has not even argued that the Agreement was procedurally unconscionable, which would require him to show, <u>inter alia</u>, that he was forced into the Agreement and had no ability to find a mortgage loan in the market that did not have an arbitration clause with a class action waiver.  <u>Roberts v. Smith Barney, Harris Upham & Co., Inc.</u>, 653 F. Supp. 406, 416-17 (D. Mass. 1986) (denying plaintiffs' unconscionability claim where "[p]laintiffs failed to allege any defect in the formation of contract that would deny [them] meaningful choice").  As the party raising the affirmative defense to a contract (<u>i.e.</u>, unconscionability), Lockwood has the burden of proving both elements of the test.  <u>See</u>, <u>e.g.</u>, <u>Millen Indus., Inc. v. Flexo-Accessories Co., Inc.</u>, 5 F. Supp.2d 72, 74-75 (D. Mass. 1998) (party asserting an affirmative defense to a contract bears the burden of proof).  His failure to do so means the Court need not even reach the issue of substantive unconscionability.

Even if the Court were to consider that issue, however, it should, like nearly every court that has considered such an argument before, reject the contention that a class action waiver provision makes an arbitration agreement unconscionable.  <u>See, e.g.</u>, <u>Jenkins v. First American Cash Advance of GA, LLC</u>, 400 F.3d 868, 878 (11th Cir. 2003) (reversing lower court's determination that arbitration agreement precluding class action relief was substantively unconscionable); <u>Snowden v. Checkpoint Check Cashing</u>, 290 F.3d 631, 638 (4th Cir. 2002) (rejecting borrower's argument "that the Arbitration Agreement is unenforceable as unconscionable because without the class action vehicle, she will be unable to maintain legal representation given the small amount of her individual damages"); <u>Johnson v. West Suburban Bank</u>, 225 F.3d 366, 369 (3d Cir. 2000) (upholding arbitration agreement precluding class action relief on grounds that "even if plaintiffs who sign valid arbitration agreements lack the

9

procedural right to proceed as part of a class, they retain the full range of" statutory rights under which they seek relief).[3]

For example, in Jenkins v. First American Cash Advance of GA, LLC, the district court found that the arbitration agreement at issue was substantively unconscionable because it precluded "borrowers from either instigating or participating in a class action suit." 400 F.3d 868, 877 (11th Cir. 2003). The Eleventh Circuit reversed the district court, holding that the "inclusion of a class action waiver in the Arbitration Agreement did not render those Agreements substantively unconscionable." Id. at 878. In so holding, the Jenkins court reasoned that "precluding class action relief will not have the practical effect of immunizing [defendants]" because the arbitration agreements permitted plaintiff "and other consumers to vindicate all of their substantive rights in arbitration." Id. The Eleventh Circuit highlighted the decisions of other federal circuit courts that had similarly enforced arbitration agreements that precluded class action relief as additional support for its decision. Id. at 878 (citing decisions from the Third, Fourth, and Seventh Circuits).

Lockwood nonetheless maintains that the class action waiver provision here is substantively unconscionable "because it effectively serves as an exculpatory clause." Opposition at 4. Again, however, a majority of courts have expressly rejected similar unconscionability challenges to class action waiver provisions, observing that plaintiffs, although unable to pursue class relief, retain a full range of substantive statutory rights that they may pursue in individual claims. See Johnson, 225 F.3d at 373 ("The Supreme Court has made clear that when arbitration will preserve a plaintiff's substantive rights, compelling arbitration in

---

[3] In addition to the cases cited herein, there are numerous additional cases that support this proposition, citations for which are attached as Appendix A to this Reply.

10

accordance with an arbitration clause will not impede a statute's deterrent function.") (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985)); Jenkins, 400 F.3d at 878 ("[P]recluding class action relief will not have the practical effect of immunizing [defendants]. The Arbitration Agreements permit [plaintiff] and other consumers to vindicate all of their substantive rights in arbitration."). The reasoning of these courts is equally applicable in this case, given that, under the express terms of the Agreement, Lockwood may pursue any substantive statutory rights he has in an arbitration proceeding focused solely on his individual claims.

Ting v. AT&T, on which Lockwood attempts to rely to support his substantive unconscionability argument, is inapposite and distinguishable from the instant facts. 319 F.3d 1126 (9th Cir. 2003). In that case, the district court and the Ninth Circuit were constrained to conclude that the class action waiver provision at issue violated California law by a 2002 California Court of Appeals decision that expressly held that class action waivers are substantively unconscionable. Id. at 1150 (discussing Szetela v. Discover Bank, 97 Cal. App. 4th 1094 (2002)). California law does not govern the Agreement here, and tellingly, Plaintiff fails to cite to, and Defendants did not find any, Massachusetts case law in support of his argument that class action waiver provisions in arbitration agreements are unconscionable as a matter of Massachusetts law.

Many of the other cases on which Lockwood relies are factually inapposite, as they involve particular problems, not present here, of unfair terms or biased arbitrators. See Opposition at 8-9 (citing, for example, Hooters of Am., Inc. v. Phillips, 173 F.3d 933 (1999) (concluding that defendant breached agreement to arbitrate by promulgating egregiously unfair and biased arbitration rules that favored defendant by, inter alia, permitting defendant to devise

11

list of arbitrators who have existing relationships, financial or familial, with defendant); Hudson v. Chicago Teachers Union Local No. 1., 743 F.2d 1187 (7th Cir. 1984) (same); Graham v. Scissor-Tail, 623 P.2d 165 (Cal. 1990) (same); Cheng-Canindan v. Renaissance Hotel Assocs., 57 Cal. Rptr. 2d 867 (Cal. Dist. Ct. App. 1996) (concluding that arbitration agreement that permitted defendant to select itself as arbitrator was unfair)).

In light of the foregoing, this Court should not hesitate to conclude that the class action waiver provision does not render the Agreement unconscionable.

### 4. THE ARBITRATION AGREEMENT "CLEARLY AND UNEQUIVOCALLY" DISCLOSES THE CLASS ACTION WAIVER PROVISION.

Plaintiff also contends that the Agreement is unenforceable because Defendants failed to disclose the class action waiver "clearly and unequivocally." Opposition at 18. This claim is patently false. The class action waiver provision appears directly above his signed initials and is "clearly and unequivocally" set forth in bold, large typeface. See Agreement at 2. Lockwood's failure to read this waiver provision, see Lockwood Aff., ¶ 10, does not render the Agreement unconscionable or otherwise unenforceable. See Hull v. Attleboro Savings Bank, 33 Mass. App. Ct. 18, 24 (1992) ("One who signs a writing that is designed to serve as a legal document … is presumed to know its contents.").

### C. PLAINTIFF'S ARGUMENT THAT EVERY SINGLE NAF ARBITRATOR IS BIASED AGAINST HIM IS LUDICROUS AND EASILY ADDRESSED IN ANY EVENT.

As his last-ditch effort to avoid the Agreement, Plaintiff argues that this Court should refuse to compel arbitration because each and every arbitrator of the NAF -- the entity before which the Agreement requires the arbitration to proceed -- is allegedly "biased and prejudicial against consumer borrowers such as Plaintiff." Opposition at 11. This argument need not detain

the Court long because, stripped of its rhetoric and unsupported allegations, it is entirely without evidentiary support.

As the sole "evidence" in support of his argument, Plaintiff directs this Court to interrogatory answers a credit company (not Defendants) allegedly provided in a 1999 state court action in Montgomery County, Alabama.[4] According to Plaintiffs, these interrogatory answers reveal that the credit card company prevailed in 99% of the cases against it submitted to arbitration before the NAF. Opposition at 11-12. Based upon this five-year old "evidence" about an entirely different company's experience in arbitration before the NAF, Plaintiff posits that all NAF arbitrators will be biased and prejudiced against him in any arbitration with Defendants. Id. This is nothing more than rank speculation. Indeed, the subject discovery responses equally support the proposition that 99% of the claims brought against the credit card company were, like Plaintiff's claims here, meritless. Under these circumstances, Plaintiff's unsupported assertions and allegations provide no legitimate basis for him to avoid his obligations under the Agreement. This Court, like the Supreme Court in Mitsubishi Motors v. Soler-Chrysler Plymouth, 473 U.S. 614 (1985), should "decline to indulge the presumption that the parties and the arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious, and impartial arbitrators." Id. at 634.[5]

---

[4] Significantly, Plaintiff has failed to provide this Court or Defendants with copies of these alleged interrogatory responses. As such, Defendants are not in a position to review or test Plaintiff's so-called evidence.

[5] To the extent this Court may have any concerns about the impartiality of NAF arbitrators (and it should not), the result should not be to refuse to compel arbitration. If an NAF arbitrator cannot arbitrate, Countrywide would be willing to have the Court appoint an arbitrator with the arbitration held, as provided in the Agreement, under NAF rules. This will moot any objection Lockwood has regarding the use of NAF arbitrators. See Large, 292 F.3d at 56-57 (noting that defendants' offer to pay arbitration costs mooted any concern plaintiff had regarding an alleged inability to pay).

**CONCLUSION**

For all of the foregoing reasons, and for the reasons set forth in its Motion and Incorporated Memorandum to Compel Arbitration, Dismiss or Stay Litigation, and Dismiss Class Allegations, previously filed, Defendants respectfully request that this Court (a) enforce the Agreement and compel Plaintiff to submit his claims to arbitration in accordance with the Agreement, (b) dismiss, or at least stay, this litigation pending the outcome of the arbitration, and (c) dismiss Lockwood's class allegations.

Respectfully submitted,

FULL SPECTRUM LENDING, INC. (n/k/a Full Spectrum Lending, a division of Countrywide Home Loans, Inc.) and COUNTRYWIDE HOME LOANS, INC.

By their attorneys,

/s/ Brooks R. Brown
Thomas M. Hefferon (BBO # 548289)
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC  20001
(202) 346-4000

Brooks R. Brown (BBO # 634144)
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA  02109
(617) 570-1000

Dated:  June 3, 2005

**APPENDIX A**

Arrellano v. Household Fin. Corp., 2002 WL 221604 (N.D. Ill. Feb. 13, 2002)

Brown v. Surety Fin. Serv., Inc., 2000 U.S. Dist. LEXIS 5734 (N.D. Ill. March 23, 2000)

Dienese v. McKenzie Check Advance of WI, LLC, 2000 U.S. Dist. LEXIS 20389 (E.D. Wis. Dec. 11, 2000)

Goetsch v. Shell Oil Co., 97 F.R.D. 574 (W.D.N.C. 2000)

Gray v. Conseco, Inc., 2000 U.S. Dist. LEXIS 14821 (C.D. Cal. Sept. 29, 2000)

Hale v. First USA Bank, N.A., 2001 WL 687371 (S.D.N.Y. June 19, 2001)

Herrington v. Union Planters Bank, N.A., 113 F. Supp.2d 1026 (S.D. Miss. 2000)

Kennedy v. Conseco Fin. Corp., 2000 WL 1760943 (N.D. Ill. Nov. 29, 2000)

Lloyd v. MBNA America Bank, N.A., 2001 WL 194300 (D. Del. Feb. 22, 2001)

Marsh v. First USA Bank, N.A., 103 F. Supp.2d 909 (N.D. Tex. 2000)

Meyers v. Univest Home Loan, 1993 WL 307747 (N.D. Cal. Aug. 4, 1993)

Pick v. Discover Fin. Servs. Inc., 2001 WL 1180278 (D. Del. Sept. 28, 2001)

Randolph v. Green Tree Fin. Corp., 991 F. Supp. 1410 (M.D. Ala. 1997), rev'd on other grounds, 178 F.3d 1149 (11th Cir. 1999), rev'd in part, 121 S.Ct. 513 (2000)

Sagal v. First USA Bank, N.A., 69 F. Supp.2d 627 (D. Del. 1999)

Thompson v. Illinois Title Loans, Inc., 2000 WL 45493 (N.D. Ill. Jan. 6, 2000)

Zawikowski v. Beneficial Nat'l Bank, 1999 WL 35304 (N.D. Ill. Jan. 7, 1999)

**CERTIFICATE OF SERVICE**

      I, Brooks R. Brown, Esq., do hereby certify, under the penalties of perjury that, on this 3rd day of June, 2005, I arranged for the service, by ECF filing, of a copy of the foregoing on the following counsel of record:

      Evans J. Carter, Esq.
      Hargraves, Karb, Wilcox & Galvani, LLP
      550 Cochituate Road
      P.O. Box 966
      Framingham, MA  01701-0966

      /s/ Brooks R. Brown
      Brooks R. Brown